IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| v. | ) | CASE NO. 2:08-CV-999-MEF |
| | ) | |
| SIX THOUSAND TWO HUNDRED | ) | (WO) |
| SEVEN DOLLARS ($6,207.00) IN | ) | |
| UNITED STATES CURRENCY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

The United States commenced this forfeiture action on December 17, 2009. (Doc. # 1.)  The Government seeks forfeiture of the defendant currency, which is alleged proceeds of illegal drug activity.  This Case is currently before the Court on a Motion to Dismiss, filed by a claimant of the defendant currency on January 11, 2009. (Doc. # 8.)  In the Motion, claimant Sylvester Vaughn ("Vaughn") argues that the Court lacks jurisdiction over this case because the Circuit Court of Montgomery County has prior, exclusive, in rem jurisdiction over the defendant currency, which attached when the Montgomery Police Department seized the currency. However, in rem jurisdiction vested in this Court at the instant of seizure because of the infrequently litigated doctrine of "adoptive forfeiture," and Vaughn's Motion is therefore due to be DENIED.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1345, 1355, and 21 U.S.C. § 881.  Vaughn argues that this Court lacks in rem jurisdiction, but for the reasons set forth below in Section V.B. the Court finds that is has in rem jurisdiction over the defendant currency.  Venue is proper pursuant to 28 U.S.C. §§ 1355, 1395.

## III. LEGAL STANDARD

A claimant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack. *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007); *In re Waterfront License Corp.*, 231 F.R.D. 693, 697 (S.D. Fla. 2005).  "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *Id.* (quotation, citation, and alterations omitted). By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony. *Id.*  If the challenge is facial, "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." *Id.*  Accordingly, "the court must consider the allegations in the plaintiff's complaint as true." *Id.*  Thus, a "facial attack" on the complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject

matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). The Motion to Dismiss presents a facial attack, so the following facts are taken from the Complaint:

## IV. FACTUAL AND PROCEDURAL HISTORY

On June 4, 2008, Montgomery Police officers met with a confidential source ("CS") and attempted to set up a purchase of cocaine base from a subject. The CS called the subject and inquired about a purchase of two and a half ounces of cocaine base. After setting up the sale, the CS entered apartment 7 in building 243 of Eastdale Apartments. Once inside the apartment, the CS gave $2,250.00 of Montgomery Police Department drug buy money to an unidentified subject. Sylvester Vaughn ("Vaughn") retrieved approximately 58 grams of crack cocaine from the refrigerator freezer and gave it to the CS.[1]

On August 6, 2008, Montgomery Police officers met with the same CS to purchase 5.5 grams of powder cocaine from a second subject. The CS set up the sale and the Montgomery Police supplied him with $300.00 in drug buy money. The second subject arrived at the prearranged location driving a Mercury Grand Marquis; Vaughn was in the front passenger seat. The CS entered the car, sat in the back seat behind the driver, and gave the driver the $300.00 drug buy money. The driver then gave the CS 5.5 grams of powder cocaine. Officers stopped the Grand Marquis after the CS alighted from the vehicle. During a search incident to the arrest of the driver and Vaughn, officers located $6,207.00 in

---

[1]The substance Vaughn gave to the CS was later tested by the Montgomery Police Department and returned a presumptive positive result for the presence of cocaine.

assorted currency in Vaughn's front pocket.  Of that sum, $220.00 was Montgomery Police drug buy money; the driver was in possession of the remaining $80.00 of the drug buy money.

A trained drug dog alerted on the $6,207.00, which means that the dog detected the exposure of the currency to illegal drugs or materials used in illegal drug manufacture or preparation. Vaughn was arrested on various charges.

Sometime between August 6, 2008, and September 8, 2008, Montgomery Police officers transfered the defendant currency to the DEA for forfeiture purposes.  On October 7, 2008, Vaughn filed a claim asserting ownership of the Defendant currency.

On December 17, 2008, the United States filed a verified complaint for forfeiture in rem.  (Doc. # 1.)  Vaughn filed a motion to dismiss the United States' verified complaint on January 11, 2009 (Doc. # 8), and filed a Claim on the defendant currency with this Court on January 28, 2009 (Doc. # 12).

## V. DISCUSSION

Vaughn argues in the Motion to Dismiss that this Court must dismiss this condemnation action for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  This Court lacks jurisdiction, he argues, because the Circuit Court of Montgomery County has prior in rem jurisdiction over the defendant currency, which deprives this Court of jurisdiction.   In support of this argument, he claims that the Montgomery Police Department seized the subject currency pursuant to Alabama Code § 20-2-93(b)(4), and that

all seizures under that provision vest in rem jurisdiction in the Circuit Court of the County in which the seizure took place, here Montgomery County.  Vaughn relies principally upon *Garrett v. State*, 739 So. 2d 49, 52 (Ala. Civ. App. 1999), for this proposition.

The United States takes the position in opposition to the Motion that Vaughn does not have standing to contest the forfeiture action.  The government argues—rightly—that a claimant must have both constitutional and statutory standing to challenge a forfeiture.  The government argues that he cannot challenge the Court's subject matter jurisdiction because he "has not presented any assertions to this Court evidencing his ownership interest in the defendant currency, [and therefore] has no standing . . . ." (Doc. # 11.)  Because this argument challenges the Court's subject matter jurisdiction, it presents a threshold issue that must be addressed at the outset. *Via Mat Inter. S. Am. Ltd. v. United States*, 446 F.3d 1258, 1262 (11th Cir. 2006); *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

### A. Standing

The Court finds that Vaughn has both constitutional and statutory standing to challenge the forfeiture of the defendant currency.  First, with respect to constitutional standing, the Eleventh Circuit has held that a possessory interest is sufficient to establish a sufficient interest to grant constitutional standing to contest the forfeiture; ownership is not required.  *Via Mat*, 446 F.3d at 1262-63 ("Ownership of property that has been seized can be evidence of the existence of an injury that is direct enough to confer standing, but

ownership is not required; non-owners, such as bailees or those with possessory interests, can also have injuries resulting from the seizure of property that are sufficient to establish standing."); *United States v. $260,242.00 in U.S. Currency*, 919 F.2d 686, 687-88 (11th Cir. 1990) ("[A] possessory interest generally is constitutionally sufficient for claims in forfeiture actions."); *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1544 (11th Cir. 1987) ("A claimant need not own the property in order to have standing to contest its forfeiture; a lesser property interest, such as a possessory interest, is sufficient for standing."). Here, the complaint unambiguously alleges that Vaughn was in possession of the defendant currency at the time of the seizure. (Doc. # 1 ¶ 7(e).)  Vaughn's affidavit asserts that he was in possession of the currency at the time of seizure and that he was the owner of the currency. (Doc. # 12-2.)  He therefore has constitutional standing under binding Eleventh Circuit precedent.

Second, Vaughn has statutory standing to challenge the forfeiture through compliance with Supplemental Admiralty and Maritime Claims Rule G(5). Supplemental Rule G(5)(a)(i) provides that "a person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending." Such a claim must "(A) identify the specific property claimed, (B) identify the claimant and state the claimant's interest in the property, (C) be signed by the claimant under penalty of perjury, and (D) be served on the government attorney . . . ." Supp. R. G(5)(a)(i)(A)-(D).  A claimant must file such a claim by the time stated in a direct notice sent under Rule G(4)(b), or, if notice was

published and direct notice was not sent, no later than 30 days after final publication of newspaper notice or 60 days after the first day of publication on an official government forfeiture site. Supp. R. G(5)(a)(ii).

On December 19, 2008, the undersigned issued a warrant for arrest in rem directing, among other things, that the U.S. Marshall to seize the defendant currency and "send any person who reasonably appears to be a potential claimant, based upon the facts known to the United States of America, a copy of this Warrant and Verified Complaint for Forfeiture in rem in a manner consistent with the supplemental rules." (Doc. # 3 2.)   The warrant states:

> IT IS FURTHER ORDERED that all persons claiming an interest in or right against the Defendant currency shall file a claim asserting that interest in the manner set forth in 18 U.S.C. § 983(a)(4)(a) and Supplemental Rule G(5). Such claim must be filed *no later than 30 days after the date of service of the Complaint*, or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the Complaint.  Each claimant shall serve and file their answer to the Complaint within twenty (20) days after the filing of the claim with the Office of the Clerk. . . .

(Doc. # 3 2) (emphasis added).[2]  The U.S. Marshall served Vaughn with the complaint, notice, and warrant at Staton Correctional Facility on January 5, 2009.  (Doc. # 6-2.) Records of this notice were returned and filed with this Court on January 8, 2009.

Vaughn has statutory standing because he satisfied the requirements of Supplemental Rule G(5) and 18 U.S.C. § 983.  Vaughn filed his claim with this Court pursuant to

---

[2]The Warrant also required that notice be published to all persons of the forfeiture, and the Government filed a Declaration of Publication on March 19, 2009. (Doc. # 17.)  The Notice of Civil Forfeiture was posted on an official government internet site for at least 30 consecutive days beginning on February 3, 2009, and ending on March 4, 2009. (Doc. # 17.)

Supplemental Rule G(5) on January 28, 2009. (Doc. # 12.), well within the 30-day window set by the warrant.[3]  Furthermore, the claim meets the requirements of Supplemental Rule G(5)(a)(i)(A)-(D) because it identifies the $6,207.00 that is the subject of this forfeiture as the property claimed, identifies Vaughn as the claimant, is signed by Vaughn under penalty of perjury, and Vaughn served the Claim on the relevant attorney for the Government. Therefore, Vaughn has statutory standing to challenge the forfeiture of the currency that is the subject of this forfeiture action.[4]  The Court therefore turns to the substance of the Motion.

## B. In Rem Jurisdiction Over the Defendant Currency

Vaughn argues that the Circuit Court of Montgomery County has prior exclusive jurisdiction over the defendant currency that is the subject of this forfeiture action.  Vaughn's jurisdictional theory is founded on the following passage from *Garrett v. State*:

> 'A civil forfeiture proceeding is an action in rem against the property itself.' *Wherry v. State ex rel. Brooks*, 637 So. 2d 1353, 1355 (Ala.Civ.App.1994).
>> To have subject matter jurisdiction in an in rem proceeding, a court must have both the jurisdictional authority to adjudicate the class of cases to which the case belongs and jurisdictional authority over the property which is the subject

---

[3]This was one day after the government filed its response to Vaughn's Motion to Dismiss, which was filed on January 27, 2009. (Doc. # 11.)

[4]Supplemental Rule G(5)(b) provides that a claimant must answer the complaint or move under Rule 12 within 20 days of filing the claim.  Here, Vaughn moved pursuant to Rule 12 prior to filing the claim and answered contemporaneously with the filing of the claim.  Therefore, his filings meet the requirements of Supplemental Rule G(5)(b).

matter of the controversy.

*Ruth v. Department of Legal Affairs*, 684 So. 2d 181, 185 (Fla.1996). As a court of general jurisdiction, the circuit court had jurisdictional authority to adjudicate the class of cases to which this [forfeiture] action belongs. *See* Ala. Const. Amend. 328, § 6.04(b). The circuit court also had jurisdictional authority over the property that is the subject matter of the controversy. *See Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80 (1992). ***A court acquires jurisdiction over the property in an in rem proceeding when the res is validly seized and brought within the control of the court.*** Id. at 84-85. ***In Alabama, the res is validly seized either pursuant to 'process issued by [a] court,'*** see § 20-2-93(b), Ala.Code 1975; *Brown & Hagin Co. v. McCullough*, 194 Ala. 638, 69 So. 924 (1915), ***or pursuant to one of the exceptions listed in § 20-2-93(b)(1)-(4), Ala.Code 1975.*** In order to have subject matter jurisdiction in a forfeiture case, 'the court must have actual or constructive control of the res when an in rem forfeiture suit is initiated.' Republic Nat'l Bank of Miami v. United States, 506 U.S. at 86. '[J]urisdiction, once vested, is not divested.' Id. at 84."

739 So. 2d at 52 (some alterations removed) (emphasis added by Vaughn). According to this passage, argues Vaughn, when the Montgomery Police seized the defendant currency, in rem jurisdiction vested in the Circuit Court of Montgomery County. Therefore, the argument continues, because it is well established that "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other," *Penn Gen. Casualty Co. v. Pennsylvania*, 294 U.S. 189, 195 (1935), this Court lacks jurisdiction.

Vaughn's argument fails because of the doctrine of adoptive forfeiture. "[U]nder the 'adoptive forfeiture' doctrine, the United States' adoption of the State's seizure of [the plaintiffs'] cash has the same effect as if the government had originally seized the currency."

*U.S. v. $119,000 in U.S. Currency*, 793 F. Supp. 246, 249 (D. Haw. 1992).  Adoptive

forfeiture was incorporated from the common law into American jurisprudence by Justice

Story in *Taylor v. United States*, 3 How. (44 U.S.) 197, 205 (1845):

> At the common law any person may, at his peril, seize for a forfeiture to the
> government, and, if the government adopts his seizure, and institutes
> proceedings to enforce the forfeiture, and the property is condemned, he will
> be completely justified. So that it is wholly immaterial in such a case who
> makes the seizure, or whether it is irregularly made or not, or whether the
> cause assigned originally for the seizure be that for which the condemnation
> takes place, provided the adjudication is for a sufficient cause.

Since that time the doctrine of adoptive forfeiture has become well established.  *See, e.g.*,

*United States v. One Ford Coupe Auto.*, 272 U.S. 321, 325 (1926) (holding, in a case

"commenced in the federal court for Northern Alabama," that the United States may adopt

seizure of property forfeitable under federal law even if seized by local official or one with

no authority to make seizure); *Madewell v. Downs*, 68 F.3d 1030, 1037-38 (8th Cir. 1995)

("A federal agency may adopt the seizure of property seized by another agency as related to

illegal drug use or trafficking."); *Linarez v. U.S. Dep't of Justice*, 2 F.3d 208, 209 (7th Cir.

1993) (holding that federal adoption may occur when seized property has been "used or

acquired to facilitate a drug related offense" under federal law); *United States v. Twelve*

*Thousand, Three Hundred Ninety Dollars ($12,390.00)*, 956 F.2d 801, 803, 805 (8th Cir.

1992) (noting that pursuant to 21 U.S.C. § 881, federal agencies may adopt seizures from

local agencies for federal administrative forfeiture); *United States v. One 1979 Chevrolet*

*C-20 Van*, 924 F.2d 120, 121 (7th Cir. 1991) (citing 21 C.F.R. § 1316.91(*l*) as providing the

authority for adoption); *United States v. Winston-Salem/Forsyth County Bd. of Educ.*, 902 F.2d 267, 272 (4th Cir. 1990) (recognizing the practice of federal adoption of local seizures); *U.S. v. $200,225.00 in U.S. Currency, More or Less*, 2006 WL 1687774, No. 7:05-CV-27 (HL) (M.D. Ga. 2006) ("The DEA thereafter adopted the seizure from the Lowndes County Sheriff's Department."); *Gervilier v. U.S.*, 26 F. Supp.2d 1376, 1376 (S.D. Ga. 1997) ("Subsequently, on November 13, 1995, the DEA adopted the seizure for forfeiture.").

Once the federal government has taken custody of property under 21 U.S.C. § 881, even when by adoptive seizure, "such property is not repleviable, subject only to orders from the court having jurisdiction over the forfeiture proceeding." *$119,000*, 793 F. Supp. at 249. In such circumstances it is the federal district court that has original jurisdiction of the federal forfeiture action.  28 U.S.C. § 1355(a); *see also Winston-Salem/Forsynth County*, 902 F.2d 267 n.1 (The "DEA adopts seizures by state or local law enforcement officials when it takes custody of seized property and treats the property as if [the] DEA had made the initial seizure. [The] DEA may then institute forfeiture proceedings in accordance with federal law.").

For example, in *Edny v. City of Montgomery*, 960 F. Supp. 270 (M.D. Ala. 1997) (DeMent, J.) (adopting report and recommendation of the Magistrate Judge), officers of the City of Montgomery Police seized $280,000.00 in cash from persons who later became claimants in a forfeiture proceeding.  After the city seized the currency at issue, the DEA adopted the city's seizure by authorizing the city to seize the money on behalf of the DEA

and to transfer the money to the DEA.  The Court held that once the federal government took custody of property under 21 U.S.C. § 881 by adoptive forfeiture, the property was subject only to orders of the federal district court, which had original jurisdiction over the federal forfeiture action pursuant to 28 U.S.C. § 1355(a). *Edny*, 960 F. Supp at 273 (citing *$119,000*, 793 F. Supp. at 249).

Vaughn argues principally that this Court lacks jurisdiction over the defendant currency because jurisdiction first vested in the Circuit Court of Montgomery County, Alabama.  It is well established that with respect to in rem proceedings "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Penn Gen. Casualty Co. v. Pennsylvania*, 294 U.S. 189, 195 (1935); *see Winston-Salem/Forsyth County*, 902 F.2d at 271.   However, under the doctrine of adoptive forfeiture, the date of the seizure dates back to the date the defendant currency was initially seized by the Montgomery Police Department; it is as if federal authorities originally executed the seizure. *See, e.g.*, *U.S. v. Certain Real Property Known as Lot B Governor's Rd., Milton, NH*, 755 F. Supp. 487, 490 (D.N.H. 1990).; *see also Jeffers v. U.S.*, 187 F.2d 498, 504 (D.C. Cir. 1950) ("The Government may adopt the seizure with the same effect as if it had originally been made by one duly authorized.").  As a consequence, jurisdiction vested in *this* Court at the time of the seizure, and the Circuit Court of Montgomery County never had in rem jurisdiction over the defendant currency. *See $119,000*, 793 F. Supp. at 249; *see also* 3 Criminal Practice Manual § 107:67 (2009) ("In an adoptive forfeiture, the state or

local seizing agency turns the property over to federal authorities for forfeiture, and the state or local authorities do not take affirmative steps to seek forfeiture. After a federal agency adopts a state or local seizure, the property is deemed to have been seized by the federal government, and is thus subject to exclusive federal jurisdiction as of the date of seizure.")

For example, in *$119,000*, a local law enforcement agency seized currency from the claimant and, on the following day, turned the currency over to the DEA. 793 F. Supp. at 246. The claimant later filed a petition against the state in state court for return of his property, and the state court granted the claimant's petition. A few months after the state court granted the claimant's petition, the DEA began administrative forfeiture proceedings. The federal court concluded that under the adoptive forfeiture doctrine, the federal court's jurisdiction over the currency was prior in time to any of the state court proceedings, and that pursuant to 21 U.S.C. § 881(c), "the state court did not have proper in rem jurisdiction over the defendant currency which was in federal custody at the time of the proceedings." *Id.* at 250; *see also U.S. v. $530.000*, 1987 WL 27357, *2 (N.D. Ill.1987) (finding that pursuant to § 881, "from the time the proceeds were taken into federal custody, the state court was prevented altogether from acquiring jurisdiction").

Vaughn also argues that this Court does not have jurisdiction because the Montgomery Police Department had no authority to transfer the seized cash to the DEA under Alabama Code § 20-2-93(b). It is of little concern to this Court whether the Montgomery Police were acting pursuant to state law when they transferred the defendant currency to the DEA. Even

assuming the transfer was ultra vires, the United States may adopt a seizure even when the person who seized the property had no authority to do so. *Winston-Salem/Forsyth County*, 902 F.2d at 272(citing *United States v. One Ford Coupe Auto.*, 272 U.S. 321, 325 (1926); *United States v. One 1956 Ford Tudor Sedan*, 253 F.2d 725, 727 (4th Cir. 1958)).  "It follows that the government may adopt a seizure where there was no authority to transfer the property." *Winston-Salem/Forsyth County*, 902 F.2d at 272; *Madewell v. Downs*, 68 F.3d 1030, 1038 (8th Cir. 1995) ("the United States 'may adopt a seizure where there was no authority to transfer the property.'").  So here, assuming arguendo that the Montgomery Police were without authority to transfer the defendant currency to the DEA, the Government may still adopt the seizure and this Court has in rem jurisdiction under 21 U.S.C. § 881.

## VI.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Motion to Dismiss (Doc. # 8) is DENIED.

Done this the 20th day of July, 2009.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE