IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 2:08-cv-999-MEF |
| ) | |
| SIX THOUSAND TWO HUNDRED ) | (WO – PUBLISH) |
| SEVEN ($6,207) DOLLARS IN UNITED ) | |
| STATES CURRENCY ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

In this lawsuit brought pursuant to 21 U.S.C. § 881(a)(6), Plaintiff United States of America (the "Government") seeks forfeiture of six thousand two hundred seven dollars ($6,207) in United States currency (the "defendant money"). (Doc. # 1). The Government alleges that the defendant money, seized during the arrest of Sylvester Vaughn ("Vaughn") for drug trafficking and distribution of a controlled substance, was furnished, or intended to be furnished, in exchange for controlled substances; represents proceeds of trafficking in controlled substances; or was used or intended to be used to facilitate violations of 21 U.S.C. § 801 *et seq*. *Id.* at 2. The sole claimant before this Court is Vaughn. This cause is before the Court on the Government's Motion for Summary Judgment. (Doc. # 47). Vaughn opposes the Government's motion. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the Court finds that the Government's Motion for Summary Judgment, (Doc. #

1

47), is due to be GRANTED.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. §§ 1345 and 1355, and 21 U.S.C. §§ 881. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, and 21 U.S.C. § 881(j).

## FACTS AND PROCEDURAL HISTORY

On December 17, 2008, the Government commenced this in rem action pursuant to 21 U.S.C. § 881(a)(6), seeking the forfeiture of the defendant money on the grounds that it was furnished, or intended to be furnished, in exchange for controlled substances; represents proceeds of trafficking in controlled substances; or was used or intended to be used to facilitate violations of 21 U.S.C. § 801 *et seq*. The salient facts are not in dispute and establish the following:[1]

On August 6, 2008, Montgomery police officers met with a confidential source (the "CS") to set up a controlled purchase of 5.5 grams of powder cocaine from a subject, later identified as Timothy Whiting ("Whiting").[2] The CS contacted Whiting and

---

[1] This recitation of facts is based upon the Verified Complaint (Doc. # 1), the Claim (Doc. #12), and the evidence submitted by the parties in support of and opposition to the motion for summary judgment.

[2] The parties also describe facts relating to a June 4, 2008 drug transaction. The Government alleges that Vaughn participated in this drug buy, which Vaughn denies. The parties also appear to disagree over whether one or two confidential sources were involved in these two transactions. However, the underlying illegal activity for this forfeiture proceeding is the August 6, 2008 drug transaction. The facts of the June 4, 2008 drug buy are unnecessary for the disposition of these summary judgment motions. As such, any

arranged for a purchase of cocaine. After photographing the $300.00 drug-buy money, consisting of fifteen twenty-dollar bills, the police officers gave it to the CS. The CS called Whiting and arranged the drug buy. Whiting drove a car to the designated location. Vaughn rode along in the passenger seat. The CS got in the vehicle and sat in the back seat. Whiting gave 5.5 grams of powder cocaine to the CS, who gave Whiting the $300.00 drug-buy money. The CS got out of the car, and Whiting drove off, still in the company of Vaughn. The CS gave the substance to Montgomery police officers. A presumptive test of the substance gave a positive result for cocaine.

A short while after Whiting's vehicle drove away, a marked patrol unit was instructed to conduct a traffic stop of the vehicle. The vehicle was stopped, and Whiting and Vaughn were taken into custody. A search incident to arrest revealed $80.00 of the drug-buy money in Whiting's possession. Vaughn's front pocket contained $6,207.00 in assorted U.S. currency, of which $220.00 was the remaining drug-buy money. A trained drug-detection dog alerted upon the currency, indicating that the dog detected the exposure of the currency to illegal drugs or materials used in illegal drug manufacture or preparation.

Vaughn was indicted by the Montgomery County District Attorney's Office for distribution of a controlled substance and drug trafficking in relation to a prior drug transaction on June 4, 2008, as well as the August 8, 2008 drug transaction. After a

---

dispute as to the facts of the June 4, 2008 drug transaction is immaterial.


federal grand jury indicted Vaughn and another with conspiracy to distribute 50 grams or more of "crack" cocaine and distribution of 50 grams or more of "crack" cocaine in relation to the June 4, 2008 drug transaction, the Montgomery County charges stemming from both transactions were dismissed. After a jury trial, Vaughn was acquitted of the federal charge on December 16, 2009.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. *To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added). A plaintiff must present evidence demonstrating that he can establish the basic elements of his claim. *Celotex,* 477 U.S. at 322. A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## DISCUSSION

The Government brings this action pursuant to 21 U.S.C. § 881(a)(6), which states in pertinent part that "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . ., all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of [the drug laws]" are subject to forfeiture. 21 U.S.C. § 881(a)(6).

By its motion, the Government seeks a grant of summary judgment ordering the forfeiture of the defendant money to the United States. (Doc. # 47). The Government

argues that all of the money is forfeitable as illegitimate drug money . (Doc. # 48, at 10–15).[3] In the alternative, the Government contends that the $220.00 drug-buy money found in Vaughn's possession represents money furnished or intended to be furnished in exchange for drugs, proceeds from such an exchange, or money used or intended to be used to facilitate a drug violation. *Id.* at 15. Because this drug-buy money was part of the $6,207.00 found in Vaughn's front pocket, the Government reasons that all of the defendant money, including any from legitimate sources, is forfeitable under the theory of commingling. *Id.* at 15–16.

In response, Vaughn argues that the Government has failed to prove that the defendant money was illegitimate drug money. (Doc. # 53).[4] Vaughn further contends that nothing connects him to the August 6, 2008 drug transaction and, therefore, his money cannot be forfeited:

---

[3] The Government points to numerous factors to support this proposition, including (1) the amount of cash found on Vaughn's person; (2) the lack of evidence as to a legitimate source for such cash; (3) the alert by the drug-detection dog; and (4) Vaughn's prior convictions for marijuana possession, robbery, and being a felon in possession of a firearm. (Doc. #48, at 10–15).

[4] Specifically, Vaughn first argues that the amount of cash found on him is relatively small in relation to prior cases, *see e.g.*, *United States v. $121,100.00 in United States Currency*, 999 F.2d 1503, 1506 (11th Cir. 1993), and therefore fails to raise a presumption that it is connected to drug activity. (Doc. # 53, at 9–10). Second, he claims no duty on his part to reveal a legitimate source of funds and that his failure to do so is not probative of drug activity. *Id.* at 10–11. Third, Vaughn contends that the drug dog's alert has, at most, minimal probative value. *Id.* at 12 (citing *United States v. $53,082.00 in United States Currency*, 985 F.2d 245, 250 n.5 (6th Cir. 1993)). Finally, he points out that his convictions do not evidence an "extensive drug related criminal history" and that he has no convictions for drug trafficking or distribution. *Id.* at 12–13.

> There is no evidence Vaughn initiated the transaction, procured the transaction, conceived the transaction or otherwise caused it to come about. There is no evidence of an offer to Vaughn by anyone to give him drugs in exchange for the defendant currency. Nor does Vaughn offer to anyone his cash for drugs. Therefore, the United States cannot establish [a prima facie case for forfeiture]. . . . There is no evidence establishing that anyone, anywhere, at anytime, acquired drugs from Vaughn in exchange for the defendant currency. . . . Vaughn did not violate any subchapter of § 801.

*Id.* at 8. In relation to the commingling theory of forfeitability, Vaughn admits that the $220.00 drug-buy money was exchanged for drugs and subject to forfeiture. *Id.* at 11. However, he argues that the remaining defendant money is not forfeitable merely by touching and "com[ing] into contact with other property that is forfeitable." *Id.* at 12 (citing *U.S. v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 639–40 (1st Cir. 1988)).[5]

## I. Legal Standard for Forfeitability

In evaluating the evidence, this Court must maintain "'a common sense view to the realities of normal life' applied to the 'totality of the circumstances.'" *United States v. Carrell*, 252 F.3d 1193, 1201 (11th Cir. 2001) (quoting *United States v. Four Million, Two Hundred Fifty-Five Thousand*, 762 F.2d 895, 903–04 (11th Cir. 1985)); *see also United States v. $291,828.00 in United States Currency*, 536 F.3d 1234, 1237 (11th Cir. 2008).

---

[5] Vaughn also argues that this Court lacks subject matter jurisdiction over the defendant money because the Circuit Court of Montgomery County, Alabama already had in rem jurisdiction over it. (Doc. # 48, at 6–7). This Court has already carefully considered this argument and rejected it because of the "adoptive forfeiture" doctrine. (Doc. # 22, at 12).

### A. The Government's Burden

Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"),[6] the Government bears the burden of proving, "by a preponderance of the evidence, that the property is subject to forfeiture."[7] 18 U.S.C. § 983(c)(1). Where the "theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense," the Government must establish "a substantial connection between the property and the offense." *Id.* § 983(c)(3).[8] "[T]he Government may use evidence gathered after the filing of a complaint for forfeiture to establish . . . that property is subject to forfeiture," *id.* § 983(c)(2), as well as circumstantial evidence. *United States v. Seventy-Four Thousand Seven Hundred Dollars*

---

[6] On April 25, 2000, Congress passed CAFRA, Pub. L. No. 106-185, 114 Stat. 202, to address concerns associated with federal civil forfeitures. Since the Government commenced this action after August 23, 2000, the date on which CAFRA became effective, CAFRA applies to this case.

[7] "The burden of showing something by a preponderance of the evidence, the most common standard in the civil law, simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before he may find in favor of the party who has the burden to persuade the judge of the fact's existence." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993); *see also United States v. Eighty Thousand Six Hundred Thirty-Three Dollars ($ 80,633.00)*, No. 2:05-cv-1086-WKW, 2008 U.S. Dist. LEXIS 32745, at *5–6 n.2 (M.D. Ala. Apr. 21, 2008), *aff'd*, 2009 U.S. App. LEXIS 18016 (11th Cir. 2009).

[8] The Government argues that the "substantial connection" requirement of § 983(c)(3) is inapplicable where the Government advances the drug-proceeds theory of § 881(a)(6). (Doc. # 48, at 16). This Court finds nothing to support this position in the Eleventh Circuit. *See Eighty Thousand Six Hundred Thirty-Three Dollars*, 2008 U.S. Dist. LEXIS 32745, at *6 n.3.

*($74,700) in United States Currency*, No. 2:06-cv-0736-WKW, 2008 U.S. Dist. LEXIS 32170, at *6 (M.D. Ala. Apr. 18, 2008).

However, the Government "is not required to 'connect the defendant currency to any particular drug transaction,' or proffer evidence that 'points to drugs to the exclusion of all other theories.'" *United States v. Eighty Thousand Six Hundred Thirty-Three Dollars ($ 80,633.00)*, No. 2:05-cv-1086-WKW, 2008 U.S. Dist. LEXIS 32745, at *5–6 n.2 (M.D. Ala. Apr. 21, 2008) (quoting *$121,100.00*, 999 F.2d at 1508), *aff'd*, 2009 U.S. App. LEXIS 18016 (11th Cir. 2009). Indeed, the property need not belong to a drug dealer when seized. *See Four Million, Two Hundred Fifty-Five Thousand*, 762 F.2d at 905 ("[Section 881(a)(6)] does not limit forfeiture to property found in the hands of a drug dealer."); *see also Carrell*, 252 F.3d at 1200 ("We have recognized that 'Congress clearly contemplated the forfeiture of property that once belonged to drug dealers, but subsequently was transferred, via 'legitimate transactions,' to third parties.'") (quoting *Four Million, Two Hundred Fifty-Five Thousand*, 762 F.2d at 905).

### B. The Claimant's Burden

Once the Government has shown that the property is subject to forfeiture, "the burden of proof shifts to the claimant[] to show, by a preponderance of the evidence, that the property is not subject to forfeiture." *United States v. Cleckler*, 270 F.3d 1331, 1334 (11th Cir. 2001). "The claimant may meet this burden either by rebutting the government's evidence or by showing that the claimant is an innocent owner." *Id.*

9

CAFRA provides for an innocent owner exception to civil forfeiture proceedings, including those brought pursuant to 28 U.S.C. § 881. 18 U.S.C. § 983(d)(1).[9] The burden of proof rests upon the claimant to establish, by a preponderance of the evidence, that he is an innocent owner. *Id.*

To qualify as an innocent owner, a claimant must be one who "(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." *Id.* § 983(d)(2)(A). However, "[i]f a post-illegal act transferee knows of illegal activity which would subject property to forfeiture at the time he takes his interest, he cannot assert the innocent owner defense to forfeiture." *Carrell*, 252 F.3d at 1203–04 (quoting *United States v. 6640 SW 48th St., Miami, Dade County, Fla.*, 41 F.3d 1448, 1452 (11th Cir. 1995)).[10]

### C. *Commingling*

If the Government establishes that property is subject to forfeiture, then "legitimate funds are forfeitable when knowingly commingled with forfeitable funds." *United States*

---

[9] Specifically, CAFRA states that "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." 18 U.S.C. § 983(d)(1).

[10] This rule can be explained as follows. A claimant with actual knowledge cannot fall under the lack of knowledge theory of 18 U.S.C. § 983(d)(2)(A)(i). Additionally, if the claimant has actual knowledge of the illegal activity *at or before* taking an interest in the property, then a reasonable step in "terminat[ing] such use of the property" under 18 U.S.C. § 983(d)(2)(A)(ii) would simply be to take no interest in the property at all.

*v. Thirty-Three Thousand Eight Hundred Thirty-Six Dollars ($33,836.00) in United States Currency*, 899 F. Supp. 574, 579 (M.D. Ala. 1995) (quoting *United States v. One Single Family Residence*, 933 F.2d 976, 981 (11th Cir. 1991)); *see also United States v. $52,000.00, More or Less, in United States Currency*, 508 F. Supp. 2d 1036, 1044 (S.D. Ala. 2007) ("Once legitimate funds are commingled with those subject to forfeiture, all of the funds become subject to forfeiture."). "[W]hen a claimant to a forfeiture action has actual knowledge, at any time prior to the initiation of the forfeiture proceeding, that claimant's legitimate funds are commingled with drug proceeds, traceable in accord with the forfeiture statute, the legitimate funds are subject to forfeiture." *Carrell*, 252 F.3d at 1204 n.12; *see also Four Million, Two Hundred Fifty-Five Thousand*, 762 F.2d at 905 ("Congress clearly contemplated the forfeiture of property that once belonged to drug dealers, but subsequently was transferred, via 'legitimate transactions,' to third parties. . . . [T]hose who knowingly do business with drug dealers do so at their own risk.").

A claimant possessing actual knowledge of the commingling of legitimate and drug funds may still claim the innocent owner defense if "the claimant can prove that everything reasonably possible was done to withdraw the commingled funds or to dispose of the property. *Carrell*, 252 F.3d at 1204 n.12; *see also United States v. One 1988 Checo Let 410 Turbo Prop Aircraft*, 282 F. Supp. 2d 1379, 1382 (S.D. Fla. 2003) ("[W]here an owner was aware of an illegal use of his property, he could still invoke the 'innocent owner' defense if he could show that he took 'all reasonable steps' to prevent

11

the illegal activity."). In other words, a claimant with actual knowledge of the illegal use cannot claim innocent ownership under the lack of knowledge theory of 18 U.S.C. § 983(d)(2)(A)(i); he must claim innocent ownership based upon the reasonable steps theory of § 983(d)(2)(A)(ii). Recall, however, that a claimant with knowledge of the illegal activity *at the time he takes his interest* in the defendant property cannot claim the innocent owner defense. *See Carrell*, 252 F.3d at 1203–04. Thus, if a claimant has actual knowledge of the drug proceeds at the time he takes his interest in them, then the innocent owner defense is unavailable and *all* property that the claimant commingles with the drug proceeds is forfeitable.

## *II. Analysis*

### *A. Forfeitability of the $220.00 Drug-Buy Money*

Vaughn concedes "that the $220 of marked buy money found in Vaughn's pocket was exchanged for drugs, and is therefore subject to forfeiture" under 21 U.S.C. § 881(a)(6). (Doc. # 53, at 11). Thus, there is no genuine issue of material fact and the Government is entitled to judgment as a matter of law on the forfeitability of the $220.00 drug-buy money.

### *B. Forfeitability of the Entire $6,207.00*

The Government argues that the remaining defendant money is forfeitable under the commingling theory. (Doc. # 48, at 15–16). Under this theory, "when a claimant to a forfeiture action has actual knowledge, at any time prior to the initiation of the forfeiture

proceeding, that claimant's legitimate funds are commingled with drug proceeds, traceable in accord with the forfeiture statute, the legitimate funds are subject to forfeiture." *Carrell*, 252 F.3d at 1204 n.12.

### i. Vaughn's Actual Knowledge

In regards to whether Vaughn knew of the August 6, 2008 drug transaction, this Court finds that Vaughn's presence in the enclosed vehicle in which the drug transaction took place, *during* the drug transaction, provides compelling circumstantial evidence that he had actual knowledge of the drug buy. Vaughn has admitted to the following facts. He arrived with Whiting to the location of the drug buy in the passenger seat of the vehicle in which the drug transaction took place. Whiting remained in the driver's seat. The CS entered the enclosed vehicle and sat in the back seat. Whiting gave the cocaine to the CS, who in turn gave Whiting the $300.00 drug-buy money. The CS then exited the vehicle, and Whiting drove off with Vaughn still in the passenger seat.

In sum, Vaughn admits to arriving with Whiting, the drug dealer, and to remaining in the passenger seat of the enclosed vehicle while the drug transaction occurred. Vaughn also admits that the drug dealer sat in the driver's seat and that the buyer sat in the back seat. Thus, the drug transaction must have occurred between the front and back seat, directly in front of Vaughn. This Court finds that, even taking all reasonable inferences in Vaughn's favor, the Government has presented sufficient circumstantial evidence to prove that, by a preponderance of the evidence, Vaughn had actual knowledge of the

13

illegal activity at the time it occurred. Based upon these undisputed facts, this Court refuses to allow one who remains in an enclosed vehicle, while a drug buy occurs directly in front of him, to turn a blind eye and claim lack of knowledge when he is found with the drug-buy money shortly thereafter. *Cf. One 1988 Checo Let 410 Turbo Prop Aircraft*, 282 F. Supp. 2d at 1383 ("'[A]ctual knowledge' may be proven by inference from circumstantial evidence suggesting a high probability of a property's involvement with drug trafficking, and . . . a property owner may not 'turn a blind eye' toward such evidence and still claim 'innocent owner' status under CAFRA.").

Vaughn has failed in his burden to "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. He has not supplemented the record with his "own affidavits, or [with] the 'depositions, answers to interrogatories, and admissions on file.'" *Id.* Vaughn has failed to even allege a lack of knowledge as to the August 6, 2008 drug transaction. He merely contends that he personally had no involvement in that drug buy;[11] however, Vaughn misunderstands the distinctions between criminal and civil forfeiture law. As the Eleventh Circuit explained:

Criminal forfeiture and civil forfeiture are distinct doctrines. Criminal

---

[11] "There is no evidence that Vaughn initiated the [August 6, 2008] transaction, procured the transaction, conceived the transaction or otherwise caused it to come about. There is no evidence of an offer to Vaughn by anyone to give him drugs in exchange for the defendant currency. Nor does Vaughn offer to anyone his cash for drugs. Therefore, the United States cannot establish [a prima facie case for forfeiture]." (Doc. #53, at 8).

>  forfeiture occurs in criminal court and comes into play only after the court has found the defendant guilty, though seizure does occur beforehand under the federal system. In contrast, civil forfeiture is an *in rem* action, *unrelated to the guilt or innocence of the property owners*. Criminal forfeiture is understood to be punitive insofar as it is intricately tied to the defendant's criminal proceeding, whereas civil forfeiture is understood to be remedial insofar as it "punishes" only the res itself.

*United States v. 1461 W. 42nd St.*, 251 F.3d 1329, 1333 (11th Cir. 2001) (emphasis added). Thus, it is not Vaughn's culpability in the underlying criminal conduct that subjects the property to forfeiture. Vaughn is not the defendant in this forfeiture proceeding; *the money is the defendant*. It is Vaughn's actual knowledge of the underlying illegal activity, namely the August 6, 2008 drug transaction, that subjects the remaining defendant money to forfeiture, *not* his participation, or lack thereof, in that drug buy. Based on the foregoing undisputed facts and taking all reasonable inferences in Vaughn's favor, this Court finds that there is no genuine dispute as to material fact and that the Government has proven, by a preponderance of the evidence, that Vaughn had actual knowledge of the August 6, 2008 drug transaction at the time it occurred. Indeed, on the record before the court, no reasonable fact finder could conclude otherwise.

### ii.  Prior to Initiation of Forfeiture Proceedings

For the commingling doctrine to apply, a claimant must have actual knowledge prior to initiation of the forfeiture proceeding. *Carrell*, 252 F.3d at 1204 n.12. It is undisputed that the illegal activity underlying this forfeiture proceeding is the August 6, 2008 drug transaction. This Court finds that the Government has proven, by a

preponderance of the evidence, that Vaughn had actual knowledge of this illegal activity *at the time it occurred*. Thus, any allegedly legitimate funds that Vaughn commingled with the drug-buy money prior to initiation of the forfeiture proceeding on December 17, 2008 are subject to forfeiture. Because the remaining defendant money was seized from Vaughn's person on August 6, 2008, shortly after the relevant drug transaction which took place in his presence and over four months prior to initiation of the forfeiture proceeding, it is subject to forfeiture if it was commingled with the drug-buy money.

### iii. *Commingling*

In order to be subject to forfeiture, legitimate funds must actually be commingled with illegitimate funds. *Id.* Vaughn contends that "the fact that the buy money touched the defendant currency in [his] pocket does not establish that the defendant currency was exchanged for drugs, or that it is proceeds traceable to a drug exchange, or that it facilitated a violation of the controlled substance laws of the United States." (Doc. #53, at 11). He further argues that money is forfeitable only when "exchanged for drugs, or is proceeds of drug dealing, or that it is intended to be used in drug trafficking, not merely that it comes into contact with other property that is forfeitable." *Id.* at 11–12. To support this proposition, Vaughn cites to First Circuit law. *Id.* at 12 (citing *Pole No. 3172*, 852 F.2d at 639–40).[12]

---

[12] The First Circuit "do[es] not believe that forfeitability spreads like a disease from one infected [piece of property] to the entire . . . property. . . . After all, only the actual proceeds of drug transactions are forfeitable." *Pole No. 3172*, 852 F.2d at 639–40.

16

Whatever views the First Circuit may hold, the Eleventh Circuit has explicitly acknowledged the forfeitability of legitimate funds when knowingly commingled with illegal drug proceeds. *Carrell*, 252 F.3d at 1204 n.12; *see also $52,000, More or Less*, 508 F. Supp. 2d at 1044 ("Once legitimate funds are commingled with those subject to forfeiture, all of the funds become subject to forfeiture.") (citing *United States v. 15603 85th Ave. N.*, 933 F.2d 976, 982 (11th Cir. 1991)). As such, it is irrelevant whether the Government establishes that the remaining defendant money represents drug money. Even legitimate money—that which is not "exchanged for drugs, or that . . . is [not] proceeds traceable to a drug exchange, or that . . . [did not] facilitate[] a violation of the controlled substance laws," (Doc. #53, at 11)—is subject to forfeiture if knowingly commingled with illegitimate funds.

Here, both $220.00 of the illegitimate drug-buy money and the remaining defendant money were found together in Vaughn's front pocket. Thus, all of the defendant money is subject to forfeiture under the commingling doctrine. *Cf. $52,000.00, More or Less*, 508 F. Supp. 2d at 1038, 1045 (granting summary judgment for the United States and finding that allegedly legitimate money was forfeitable under the commingling doctrine when found on the claimant's person in sealed envelopes along with illegitimate funds). Additionally, Vaughn concedes that the allegedly legitimate money and the illegitimate money were, in fact, commingled. (Doc. #53, at 3) ("A search incident to arrest revealed . . . $220.00 of the buy money in the possession of [Vaughn]

17

*co-mingled* [sic] with $6,207.00 of United States currency.") (emphasis added); *see also id.* at 11 ("The fact that $220 of buy money was *comingled* [sic] in Vaughn's pocket with the defendant currency, does not establish that the government has met its burden by a preponderance of the evidence that the defendant currency is subject to forfeit.") (emphasis added). Thus, this Court finds that there is no genuine issue of material fact and that the Government has established, as a matter of law, that the $220.00 drug-buy money was commingled with the remaining defendant money.

In sum, the undisputed facts, taking all reasonable inferences in Vaughn's favor, establish the following: (1) Vaughn had actual knowledge of the illegal activity at the time it occurred on August 6, 2008; (2) his allegedly legitimate funds were commingled in his front pocket with the illegitimate $220.00 drug-buy money on August 6, 2008; and (3) this commingling occurred prior to initiation of this forfeiture proceeding on December 17, 2008. Thus, Vaughn had actual knowledge that his allegedly legitimate funds were commingled with illegitimate funds prior to initiation of the forfeiture proceeding; therefore, as a matter of law, all of the defendant money is subject to forfeiture.

### C. *Innocent Owner Defense Unavailable*

In the Eleventh Circuit, even claimants with actual knowledge of the commingling of legitimate funds and drug proceeds can still claim the innocent owner defense if "the claimant can prove that everything reasonably possible was done to withdraw the

18

commingled funds or to dispose of the property." *Carrell*, 252 F.3d at 1204 n.12. However, "[i]f a post-illegal act transferee knows of illegal activity which would subject property to forfeiture *at the time he takes his interest*, he cannot assert the innocent owner defense to forfeiture." *Id.* at 1203–04 (emphasis added). The undisputed facts demonstrate that the CS gave the drug-buy money to Whiting during the drug transaction. Thus, Vaughn must have obtained his interest in the $220.00 drug-buy money *after* the drug transaction. Because the Government has established that Vaughn had actual knowledge of the drug transaction *at the time it occurred*, Vaughn knew of this illegal activity when he later took his interest in the $220.00 drug-buy money. Therefore, the innocent owner defense is unavailable to Vaughn.

## CONCLUSION

It is understood that one who engages in criminal conduct runs the risk of incarceration and the forfeiture of his property; this case, however, provides a crucial warning for those who knowingly associate with criminals. Once cannot receive money from drug dealers, with a wink and a nod, and then be immune to the consequences. As the Eleventh Circuit has so assertively stated, "those who knowingly do business with drug dealers do so at their own risk." *Four Million, Two Hundred Fifty-Five Thousand*, 762 F.2d at 905. For the foregoing reasons, it is hereby ORDERED that the Government's Motion for Summary Judgment (Doc. # 47) is GRANTED.

It is ORDERED that the Government shall file a proposed Decree of Forfeiture **on**

**or before October 1, 2010**.

It is further ORDERED that the pretrial conference scheduled for September 29, 2010 is CANCELLED.

The Clerk of the Court is DIRECTED to remove the above-styled case from the trial docket.

The Court will enter a separate final judgment consistent with this Memorandum Opinion and Order.

DONE this 24th day of September, 2010.

                                              /s/ Mark E. Fuller
                                      CHIEF UNITED STATES DISTRICT JUDGE